Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
         Kinser, JJ., and Stephenson, Senior Justice

ANGELA D. TOOMBS
                                        OPINION BY
v.  Record No. 971951    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        June 5, 1998
BRETT K. HAYES

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge

     The sole issue in this appeal is whether the jury's verdict

is inadequate as a matter of law.

                                   I

     Angela D. Toombs sued Brett K. Hayes to recover damages for

injuries Toombs sustained in a motor vehicle collision.  Hayes

admitted liability for the accident.  Following a jury trial on

June 13, 1997, to determine Toombs' damages, the jury returned a

verdict in the amount of $23,282.84.  Toombs moved the trial

court to set aside the verdict and order a new trial, claiming

that the verdict was inadequate as a matter of law.  The court

overruled the motion for the reasons stated in its letter

opinion dated June 19, 1997, and, on June 25, 1997, the court

entered judgment on the verdict.  Toombs appeals.

                                  II

     The motor vehicle collision occurred on September 14, 1994,

in the City of Richmond.  Toombs was a front-seat passenger in

an automobile operated by Lori J. Curtis.  The automobile

operated by Hayes struck the passenger side of the Curtis car.

The next day, Toombs received treatment at a hospital emergency room. From September 19, 1994, to April 21, 1995, Toombs was under the care of Dr. John T. Carmack, her family physician. Dr. Carmack testified that, as a result of the collision, Toombs suffers from chronic mechanical back strain, synonymous with sacroiliac joint dysfunction, and muscle spasms in the low back. He further testified that all of the treatment he provided was necessary and appropriate.

On April 21, 1995, Dr. Carmack referred Toombs to Dr. Mark E. DeBlois, an orthopedic surgeon. Dr. DeBlois testified that, as a result of the collision, Tombs sustained a lumbar or sacroiliac strain. The doctor ordered various tests and physical therapy and prescribed pain medications and anti-inflammatories. He also referred Toombs to Dr. Douglas A. Wayne, a specialist in rehabilitation and physical medicine. According to Dr. DeBlois, his treatment of Toombs was necessary, reasonable, and directly related to her injuries received in the accident.

Dr. Wayne testified that, as a result of the automobile collision, Toombs suffers from sacroiliac dysfunction and chronic strain of the lumbosacral supraspinous ligaments. The doctor recommended that Toombs continue doing stretching exercises and using a sacroiliac belt. He also prescribed electrical stimulation to dull or mask Toombs' pain.

2

Toombs' medical expenses totaled $18,838.52. As a result of the collision, she incurred $4,444.32 in lost wages. She testified that, as a result of the accident, she has had constant low back pain, her once physically active lifestyle is now restricted, sexual relations with her husband have been affected, and she has had to postpone plans to have other children.

## III

The jury returned a verdict in the exact amount of Toombs' medical expenses and lost wages. Toombs contends that the verdict is inadequate as a matter of law. We agree.

Recently, in Bowers v. Sprouse, 254 Va. 428, 492 S.E.2d 637 (1997), decided after the trial court ruled in the present case, we held that "a jury award in a personal injury action which compensates a plaintiff for the exact amount of the plaintiff's medical expenses and other special damages is inadequate as a matter of law, irrespective of whether those damages were controverted." Id. at 431, 492 S.E.2d at 639. This is so, we said, because such a verdict "indicates that although the jury found the plaintiff was injured and had incurred special damages, the jury, for whatever reason, failed to compensate [the plaintiff] for any other items of damage." Id., 492 S.E.2d at 638. We noted that, "at a minimum, [the] plaintiff

experienced pain, suffering, and inconvenience . . . and was entitled to compensation for [those] elements of damage."  Id.

Hayes attempts to distinguish the present case from Bowers, relying upon certain handwritten notations on the verdict form. The notations, immediately below the foreperson's signature, read:

```
18,838.53 Medical
 4,444.32 Lost Wages
          Pain + Suffering
```

These notations, however, had been scratched out.  Below them are the following notations:

```
1,482.68 Medical
1,204.09 Wages
_____ Balance For Pain + Suffering
```

Hayes argues that "[t]he notations clearly demonstrate that the jury awarded the plaintiff damages for her medical expenses, earnings lost, pain suffered and inconvenience caused as a result of [his] negligence."

We think reliance upon the notations would raise many questions and require us to resort to speculation and conjecture.  We have no way of knowing who made the notations and why or who, if anyone, authorized them.  We can only speculate whether the notations were approved by the jury.  More perplexing is why, if the jury intended to compensate Toombs for pain, suffering, and inconvenience, the verdict is in the exact amount of her special damages.

4

In *Ingles* v. *Dively*, 246 Va. 244, 253, 435 S.E.2d 641, 646 (1993), we addressed the issue respecting notations on a verdict form. We stated that "[w]e share the virtually unanimous view of courts across this country that a court should not engage in speculation over the meaning of notations made by jury members on the verdict form during the deliberative process."

Previously, however, in *DeWald* v. *King*, 233 Va. 140, 354 S.E.2d 60 (1987), we did consider certain notations on a verdict form. A close reading of *DeWald*, though, indicates that consideration of the notations was unnecessary and not essential to our holding. Before making any reference to the notations, we had already determined, based upon *Rome* v. *Kelly Springfield Tire Co.*, 217 Va. 943, 234 S.E.2d 277 (1977), and its progeny, that the verdict in *DeWald* was inadequate as a matter of law. Therefore, the reference to the notations on the verdict form was merely *dictum*.

Accordingly, we adhere to what we said in *Ingles*. Notations such as those in the present case, located below the signed verdict, simply are not part of the verdict, and a court should not speculate about their origin, purpose, or meaning.

We hold, therefore, that *Bowers* is controlling and that the verdict in the present case is inadequate as a matter of law. We will reverse the trial court's judgment and remand the case for a new trial on damages.

5

Reversed and remanded.